UNITED STATES DISTRICT COURT
For
THE DISTRIC T OF MASSACHUSETTS

_____
                                          )
UNITED STATES OF AMERICA,    )
                                          )
vs.                                       )          CRIMINAL ACTION NO. 08-10386-PBS
                                          )
                                          )
YUFENG WEI, a/k/a ANNIE WEI   )
                    Defendant.       )
_____)

## ANNIE WEI's SENTENCING MEMORANDUM

How does one evaluate a person's character?  Is the person worthy of compassion or not?  There is no magic "looking glass" that would allow the Court to look into the soul of Annie Wei to determine whether she is truly worthy of this Court's compassion – nor to decide whether her acts were mired in mistake, error and ignorance rather than the consequence of connivance and a dark heart.

In this case, after the jury returned its verdict, the government moved to revoke Annie's bail and remand her to custody.  The Court, in denying the request, indicated that it had observed Annie for the last six weeks at trial and that glimpse of her actions gave the Court a sense that Annie would abide by the conditions of release and did not need to be incarcerated pending sentencing.

Admittedly, it is difficult to capture the essence of the person in such a short period of time or, thereafter, through the reporting of her life by others who do not know them.  However, evaluating the entirety of Annie's life and how she has acted and re-acted to the many adversities in her life will, especially from the perspective of people

who have known her and have reacted with her personally, in the end, I submit, surely

buttress the Court's preliminary view and show that Annie is worthy of this Court's

compassion.

ARGUMENT

I.      ANNIE WEI SUBMITS THAT A SENTENCE OF HOME CONFINEMENT
        IS APPROPRIATE GIVEN THE NATURE AND CIRCUMSTANCES OF
        HER PARTICIPATION IN THE OFFENSES AND THE ENTIRETY OF
        THE CIRCUMSTANCES OF HER LIFE.

      *a.*   ***The Tragedy of Annie Wei's Life – She's Always Been Little More than a
        Bit Player in the Drama of Her Own Life.***

Whether a consequence of her gender or her culture, or a confluence of both,

Annie's life has always been directed and driven by the actions and goals of others.  She

is always the passenger in someone else's vehicle – never able to choose her own

destination or route of travel.  Sadly, Annie's life almost mirrors that obnoxious

caricature of a Chinese woman walking five paces behind her man.

As a young woman in China, Annie's life, destiny, dreams and hopes were

controlled and determined by the government.  Typical of such governmental control,

Annie says that her family and older sisters were impacted by the Cultural Revolution. As

an example of this control, Annie says that since her paternal grandfather was a

(Kuomintang) commander in the army, he was shunned, publicly humiliated, and

transported to the farmlands for "*re-education*."  Her siblings were not allowed to go to

school, and her oldest sister was sent to the *countryside* for ten years, her forth older

sister went for 5 years.  See *Pre-Sentence Report*, ¶79.  Annie says that by the time she

attained school age, the views of government officials had ameliorated a bit, and

education became a higher priority.  She was *allowed* to attend school – a right we in America take for granted.

She was a good student who behaved well, and her parents were very proud of her.  As a result of her academic achievements, she was *selected* for employment in Beijing, where she lived between 1987 and 1992 – told where and in what field she could work.

Annie says she met her former husband Zhen Zhou Wu (hereinafter "Alex" or "Wu"), in the mid-1980s while she was attending college. They got married on June 17, 1988 in Beijing, China.  Shortly after their marriage, Annie's husband Alex was a participant in the Tiananmen Square protests in 1989, and it was difficult for him to remain in China after the massacre.  Annie also says that Alex did frequent protest writing against the Chinese government that made it difficult for him to remain in China. See *Pre-sentence Report*, ¶88.  Alex decided – without much consultation with Annie -- to come to the United States in 1991 to study East Asian Studies at Harvard University, to learn English, and to find a way to change the Chinese system from the outside.  As Alex's wife, Annie felt it her duty to leave her family and follow her husband.  After Alex moved to America, Annie thereafter came to the United States in September 1992 on an F2 student/spouse visa in order to join Alex who was then studying at Harvard.  *Id*.

In the beginning of their marriage, Annie's relationship with Alex was good. They lived together in China until 1991 when Alex came to the United States to attend university.   When Alex left China, Annie was eight (8) months pregnant and she stayed behind to give birth.  After giving birth to Rose, Annie remained in China (alone) to care for her newborn daughter.  See *Pre-sentence Report*, ¶ 89.

Annie left China in 1992 to join Alex in the United States.  Wanting to make the best life possible for her new daughter, while still fulfilling her duty to her husband, Annie made the heart-wrenching decision to leave her newborn daughter Rose in the care of her parents for the next four years (1992 to 1996), while she and Alex tried to establish themselves and secure financial stability in the United States.

In 1995, Annie became pregnant and gave birth to her second daughter Rowan.[1] After she became pregnant, Alex moved back to China due to an expired visa, as well as to work for a U.S. company who wanted him to establish an office in China.  As with everything in her life, the decision to have her second child (alone) in the United States was a joyous event, but also a dilemma for Annie: under Chinese law she was limited to procreating only once.  She could not give birth to her second child in China, even though Alex had already left the United States and was back living in China. The birth of a second child would preclude her return to live with Alex in China.

Annie's relationship with Alex began to deteriorate in 1995, after he returned to China -- communication was increasingly difficult due to the distance and their schedules.  He was busy operating his business, and she was busy raising their two daughters.[2]  Alex had not been present for the births of either of their daughters.  They argued frequently and did not have much to discuss. They had grown apart, as Alex wanted to remain in China, and Annie wanted to stay in the United States to be with and provide better opportunities for her children. Notwithstanding that Annie could not bring her second born to China, Alex's decision to remain in China was final and she would be

---

[1]   Having been born in the United States, Rowan is an American citizen.

[2]   Shortly after the birth of her second daughter, Annie brought her first born daughter to live with her in the United States.

forced to live alone and raise her children by herself – while still being required to help Alex further his business interests in the United States.  See *Pre-sentence Report*, ¶ 94.

In 1996, Alex opened his own business, Chitron Electronics Company Limited (a/k/a Chitron-China) in Shenzhen, China.  Annie worked for Chitron in the United States.

Alex and Annie were formally divorced on April 8, 1999 in China; however, they did not tell their parents or their children due to the fact that divorce is viewed negatively in the Chinese culture. Annie only recently told her daughters of the divorce.

Annie needed to travel to China to finalize the divorce.  After the divorce Annie was so distraught that she became ill.  She remained in China for three months trying to get her life back together.  Knowing that she had to care for her daughters, Annie mustered all the strength she could and returned to the United States with her children. She worked out an agreement with Alex and continued to work at Chitron.  She knew that in the United States her daughters would have the life choices and opportunities she could and would never have.

Annie worked hard – bringing up her children and at Chitron.  As reflected in the emails admitted as evidence in this case, as between Alex and Annie, Annie was an order "taker", not an order "giver".  Alex ran the business and often chided her for not working long or hard enough.  She very rarely complained and, like the dutiful Chinese wife (although she was no longer married), she complied with Alex's orders without question. She even masked the true nature of her relationship with Alex from the Chitron employees and her own children and family.  She pretended to still be married to Alex for the sake of her children – forsaking the chance to find love with someone else.

Typical of the disparity of the relationship between Alex and Annie, after the company had grown and Alex wanted to change the direction of the company, he attempted to fire Annie and hire Steve Gigliotti in her place.   Annie finally summoned the guts to fight back and refused Alex's attempt to terminate her, but, instead, took a much reduced role in the company – with a much reduced salary.  The way she was treated shows that she was not a business partner or even an equal; she was the proverbial Chinese wife who hobbled along behind him and was required to do Alex's bidding on his terms.  She was relegated to an office at her home.  Her day-to-day life and destiny was still at the whim of others, but the final indignity was yet to come.

After the Indictment in this case counsel for Alex and Annie entered into a joint defense agreement.  As part of the joint defense agreement Alex's counsel gave Annie's counsel permission to talk to Alex at Wyatt.  The purpose of the meeting was to discuss the case and the goal(s) to be achieved for Annie.  Counsel was told to do whatever could be done to save Annie from having to go to prison so she could be able to care for the couple's children.  Thereafter, all of counsel's efforts were aimed at achieving that goal.

After a considerable amount of work, and shortly before trial, Annie's counsel engaged in negotiations with the prosecution for a resolution of the case against Annie. The prosecutors offered to allow Annie to plead to an Information charging misprision of a felony; recommend home confinement; and take no position with regard to deportation. The understanding was that such a disposition might prevent the mandatory deportation of Annie and allow her to remain in the United States to care for her children.  Both Annie and her counsel were elated at the recommendation and expressed Annie's willingness to accept the offer.

Then, the quintessential *driver* in her life reared his ugly head – the Prosecutors conditioned the deal for Annie on a global resolution, thus putting her to the task of brining Alex to the table and having him plead guilty also.  So, after having been dragged away from her homeland and family; having been left alone to birth two children; having been left for another; having been essentially fired from a company she helped build; having been indicted for actions ordered by her former husband, and with her freedom on the line, her destiny would still be decided by Alex.

Alex refused to plead guilty to any of the offers made by the government.[3]

As the trial date was rapidly approaching, Annie's counsel asked Alex's counsel for permission to have one last conversation with Alex to try to get him to accept the deal offered.  Alex tried to continue to negotiate and asked Annie's counsel to see if he could get Alex a better deal.  When told that could not happen Alex told counsel that Annie would have to stay strong and accept the consequences.  "NO DEAL".

When told that Alex would not accept the deal, Annie showed no emotion. Thereafter, without a word of complaint, she sat for six weeks, five paces behind Alex in the courtroom, and endured and was pained, by the strange antics of her former husband – her life inextricably tied to and controlled by his will.

She stands before the Court today, and asks that the invisible chain that links Alex and Annie be broken here.  Annie is a person who has her own life to live.  She must be judged in her own right.  She should not simply follow her husband (five paces behind) to prison because of his choices.

---

[3]   Having attended Mr. Wu's Sentencing Hearing on Wednesday, January 26, 2011 counsel can note that the irony of the situation is that the offer to Mr. Wu was about one-half (1/2) of the sentence he received.

### b.  Annie – Through the Eyes of her Family and Friends.

Words like "loyal," "honest" and "trustworthy" may easily roll off one's tongue, but deeds are harder to contrive and, therefore, more reflective of a person's character – especially deeds done by that person at a time when there is no reason to believe their character will be questioned. Viewed in this light, and notwithstanding Annie's obvious naiveté respecting the custom's regulations, Annie Wei has proven herself to be a person of honor; a good person; a good mother; a hard working, unselfish, caring and compassionate woman.

The number of letters attesting to her outstanding character, and the wide spectrum of the people who have written to the Court on Annie's behalf – each exposing a little glimpse of Annie's involvement in their lives – paint a portrait of an individual who is imminently worthy of this Court's compassion.

In her life Annie has always tried to do the right thing.  The letters from Annie's family and friends are rife with testimonials of Annie's character of always and genuinely trying to follow the spirit and letter of the law -- always trying to do the right thing, both legally and morally.  Annie's family, friends, members of her community and professional colleagues have all written letters of support.  Each letter describes a woman deserving of this Court's leniency.

While ignorance of the law is not an excuse, one of the consistent themes in the support letters is that the Annie these people know and have lived with and observed over a long period of time would never intentionally break the law.  *Shujen Wang*, an Associate Dean at Emerson College, writes:  "… I hope that through my letter, your Honor would get to know the kind, generous, giving, loving and loyal nature of Annie,

who in my knowledge would never intentionally do anything that is dishonest or unethical."[4]  Vice President *Jianyou Li* of Tianjin Normal University in China agrees, stating:  "I think it a big mistake to understand such a kind, responsible mother in the community and the country.  Even if she's done something wrong, it would be a mistake, but not to be guilty of a crime.  Because we all know it was not her intention."

Another recurring topic was Annie's devotion to community service.  *Daniel Lee*, an elder from the Church in Cambridge wrote not only of Annie's regular attendance and participation in Sunday services, but also of her volunteering as a Sunday school teacher and her willingness to cook and clean for church functions.  *Lu Lin*, a member of the congregation also wrote of her contributions to the Church.  Her brother and sisters wrote from China about her excellent school performance and also of her willingness to help other students with their studies.

Annie's siblings also wrote of Annie's hard work in other aspects of her life.  She was in the top 3% of high school graduates, which enabled her to go on to the university. While in college, she was elected Model Student and awarded scholarships.  Annie also organized many community activities while in college.  Other family members offered support as well.  Her nieces and nephews wrote of Annie's financial support for their college educations.  They credit Annie with their degrees in engineering, nursing and accounting.  *Hanqui Song*, an employee of the Chinese Consulate General in Cape Town, South Africa, writes:  "Yufeng is the one with serious and attentive working attitude, who would bury herself in work.  … Her working place was almost 20 miles away, and she would ride on the bicycle back and forth for two and a half hours every day without

---

[4]  Most of the letters are written by non-English speaking individuals.  Counsel has quoted verbatim rather than correct the grammar.

complaint." *Feng Han*, a scientist with Life Technologies, wrote "Yufeng and Zhen Zhou are the most hardworking people we know.  They started their business from scratch and worked long hours year after year to build up their business.  Yufeng not only works hard to make a living for the family, but also spends a tremendous amount of time and energy raising her two lovely daughters, Rose and Rowan."  Another friend (Annie's college teacher), *Peizhu Liu* writes "Yufeng was aspired to achieve high goals.  She was a caring and hard working student, always showed compassion for her classmates and respect for her teachers.  She was enthusiastic about her studies and life in general."  A co-worker from 1987, *Rui Ma*, spoke of their work at the foreign embassies in Beijing.  "Yufeng was very dedicated to her job and highly praised by her colleagues in the embassy."

There were many letters that related Annie's kindness to friends and family.  It is very telling of Annie's nature that both the UPS and Federal Express drivers to Chitron wrote to tell the Court about Annie's caring, kind, respectful nature.  *Michael Smith*, the UPS driver (sales manager), who was also a government witness, told of Annie's assistance with their children and her introduction to friends when he and his family came from California, with no family or friends in New England.  A friend from Annie's family's days at Harvard said "she not only supported me emotionally but also offered her home that my daughters and I might find comfort … Drawing on a reservoir of generosity, strength and level-headedness, she has helped me in countless decisions and helped me through numerous hurdles."

Many of the letters also spoke to Annie's love for America.  *Judy Hua Zhu*, a college friend from China, says "Yufeng has always been full of gratitude to this country

for providing her the opportunities to get her advanced degrees, work and raise her family here.  It is completely unimaginable to me if Yufeng is deemed to be harmful to this society.  On the contrary, she has always been the person who has the greatest love for this country, its people and its communities."  The letter from her siblings states:  "She would tell us the history and culture of America. She was proud of living and working in the United States…She is very proud to be a taxpayer in the United States."

Every letter received by this Court attested to Annie's qualities as a mother.  The letters describe her as dedicated and devoted, active in her children's schools and church, encouraging both her daughters to serve their community and work hard at their studies.  The daughters are described as bright, talented and hardworking.  Her oldest daughter, Rose, tells the court of her admiration for her mother.  In addition to the instant matter, the past few years have brought many other hardships to Annie and her daughters.  Annie has tried to shield her children from the effects of the divorce, the death of Annie's mother and the financial hardships this case has brought to the family.  Rose also illustrates her mother's respect for the law by relating her inspection of every rule and regulation of the junior operator's license and being sure that Rose followed them to the letter.   Rose portrays her mother as a role model; a woman of great integrity, personal resolve and courage.

In consideration of Annie's character, a sentence of home confinement would be appropriate. It would act as an adequate deterrence and still allow Annie to be near and available to her daughters to provide the emotional support necessary to allow her daughters to grow to be good and responsible women.  Home confinement would also allow Annie to work and help with her daughter's financial support.

**II.     ANNIE'S EXTRAORDINARY FAMILY CIRCUMSTANCES WARRANT A DOWNWARD DEPARTURE OR VARIANCE.**

Prior to *Booker*, a downward departure on the grounds of family ties and responsibilities was "appropriate if the defendant's role '[was] so different in kind or degree from the many kinds of support that can be important in the [family] relationship that it ma[de] the family ties and responsibilities factor . . . exceptional." *United States v. Roselli*, 366 F.3d 58, 69 (1st Cir. 2004), quoting *United States v. Louis*, 300 F.3d 78, 82 (1st Cir. 2002). Post *Booker*, "as a general matter, courts may vary from Guideline ranges based solely on policy considerations, including disagreements with the Guidelines." *United States v. Martin*, 520 F.3d 87, 93 (1st Cir. 2008) quoting *Kimbrough v. United States*, 552 U.S. 85, 101 (2007). "A district court therefore may take idiosyncratic family circumstances into account, at least to some extent, in fashioning a variant sentence." *Martin*, 520 F.3d at 93.

The circumstances of Annie Wei's family unit must be considered in fashioning an appropriate sentence.  Annie is now the only caretaker for her 14 year old daughter and the only adult support for her 19 year old daughter Rousi.

Annie lives with her daughter Rowan in a modest two family house in Belmont. Rowan attends Belmont High School and is a US Citizen.  As noted in the Pre-sentence Report, Rowan was born in 1995 in Boston, MA and [is in] the ninth grade at Belmont High School. She is very sensitive and attached to the [Annie].  Annie's first born daughter Ruosi ("Rose") is presently (applying to be, but not yet ) a naturalized US citizen and is in her second year at the University of Michigan.  She comes home for vacations and over the summer break.  Annie has always taken a very active role in her children's upbringing and education.  Even while attending Johnson & Wales in

Providence, working at Chitron (full time and then part time) and operating a day care facility for Chinese children in the second apartment in her home Annie always made time to help with her daughters' education and participate at school events. Annie's primary, over-arching goal throughout her whole adult life has been to care for and educate her daughters. It is solely this effort that has motivated her life and brought her real joy.

Annie has no family in the United States and if Annie were to be incarcerated Rowan would have to be taken in by friends. Both girls have lived in the United States for virtually their entire lives – they are Americans. Annie has expressed real concern whether either Rousi or Rowan could function in China.

## II.   Applying 18 U.S.C. §3553(a), The Court Should Impose A Sentence Outside of and Substantially Lower Than the Guideline Range in Order to Avoid or a Sentence Greater Than Necessary.

### a.   *The Furtherance of Sentencing Goals*

Among the other factors this Court must consider are: (1) the need for the sentence to (a) reflect the seriousness of the offense, promote respect for the law, and to provide just punishment for the offense; (b) to afford adequate deterrence to criminal conduct; (c) to protect the public from further crimes of the defendant; and (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Our highest court has recognized that even the standard conditions of probation represent a substantial restriction of the liberty of a probationer. See *Gall v. United States*, 552 U.S. 38, 44 (2007); *United States v. Knights*, 534 U.S. 112, 119 (2001) ("Inherent in the very nature of probation is that probationers 'do not enjoy the absolute

liberty to which every citizen is entitled'") (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987) (footnote omitted).  Home confinement, one step above probation, clearly has the same restrictions.

Indeed, the Court in *Gall* stated that, "a sentence of imprisonment may work to promote, not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." 552 U.S. 459, 460 (2007). A sentence of home confinement for an individual who, but for this offense, has lived her life to the highest personal, professional and ethical standards will feel the sting of that sentence with a force that will well serve the goals of deterrence. The substantial restriction on her freedom; certain deportation after her sentence is served and the severe financial hardships Annie faces with Alex now incarcerated for at least six (6) more years will create a significant hardship on her daughters and her.

Respect for the law and general deterrence are not undermined when a court recognizes that the circumstances of a particular defendant's conduct and the defendant's character favor home confinement. For this defendant, there is little doubt that home confinement can reflect a reasonable and narrowly tailored sentence well-suited to her and that such a sentence could be sufficient but not greater than necessary to effectuate the purposes of the Sentencing Reform Act.  The deterrent effect of this case is adequately expressed by the sentence given to Annie's former husband, Alex.  No further message needs to be sent.

There is no need for the sentence in this case to either protect the public from future criminal activity or provide the defendant with training, care or treatment. This

defendant does not have the characteristics of a re-offender and has the skills she needs to practice her profession.

III.    ADOPTION OF ZHEN ZHOU WU'S ARGUMENTS.

Rather than set out herein and reargue all the legal points relating to the sentencing issues raised in the Pre-sentence Report and the Government's (joint) Sentencing Memorandum presented by Ms. Wei's former husband Zhen Zhou (Alex) Wu, Ms. Wei adopts all of said arguments made in his Sentencing Memorandum and at his Sentencing hearing held on January 26, 2011, as if made by her.

IV.    CONCLUSION

Annie Wei is an exceptional person who deserves a chance to rebuild her life. She is contritious and, but for the decision of another, would have pled guilty and expressed her heartfelt sorrow for the shame she has brought upon her daughters, her family and her adopted country.  Annie Wei is a woman of many admirable qualities who has built her life around family, friends, church and community. The guidelines calculation aside, it is difficult to envision a criminal defendant more worthy of a sentence of home confinement. Her strong history of helping others, uninterrupted employment and professionalism, her extraordinary family and community support system, all support this result.  Based upon Ms Wei's history and characteristics, the nature and circumstances surrounding the offenses on which she has been found guilty, especially taking into account the circumstances leading up to decision to proceed to trial in this matter, and the other relevant statutory sentencing factors set forth in 18 U.S.C. §3553, Ms. Wei respectfully asks this Court to impose a sentence of home confinement.

In closing, when interviewed by the Probation Officer, Annie's longtime friend

Shannon Lu who indicated that she has known Annie since 1996 when they attended

Johnson and Wales University in Providence, Rhode Island said of her:

> She [is] "the sweetest person," who always offers to help other people. Ms. Lu indicated that the defendant has many good friends based on her personality. She further advised that the defendant is very close with her daughters, loves them very much, and would do anything for them. She noted that the defendant maintained a friendly relationship with her former husband after their divorce and that she cared for him when he visited her. According to Ms. Lu, the defendant is a devoted Christian who attends church regularly, volunteers at a food bank, teaches Sunday school classes, and holds Bible Study classes in her home. Ms. Lu does not believe that the defendant knew that her conduct in the instant offense was wrong, and does not believe that she would deliberately violate the laws of the United States. She indicated that the defendant has always been so appreciative of everything that the United States has provided to her and her children.  See *Pre-sentence Report*, ¶(101)

For all of the foregoing reasons, a sentence of home confinement is no greater

than necessary to promote the sentencing objectives set forth in 18 U.S.C. § 3553.

Respectfully submitted,

Annie Wei, Defendant
By her attorney

/s/ William J. Cintolo
_____
William J. Cintolo, BBO No. 084120
COSGROVE, EISENBERG & KILEY, P.C.
One International Place, Suite 1820
Boston, MA 02110
617-439-7775 (tel) -- 617.330.8774 (fax)
wcintolo@aol.com

## CERTIFICATE OF SERVICE

I, William J. Cintolo, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on January 27, 2011.

/s/ William J. Cintolo
_____